| | | |
|---|---|---|
| CHARLES GRISE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:12-CV-422 |
| | ) | |
| FLAIR INTERIORS, INC. EMPLOYEE | ) | |
| BENEFIT PLAN and FLAIR INTERIORS, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

## I. INTRODUCTION

On July 31, 2012, Charles Grise was cleaning a building he owned—part of which housed his small welding business—when he fell either through a false ceiling or an opening, to the floor below, breaking his neck and necessitating extensive medical treatment. Grise's medical providers submitted their bills to his health insurance, a self-insured employee benefit plan entitled Flair Interiors, Inc. Employee Benefit Plan (the "Plan"), sponsored and administered by his wife's employer, Flair Interiors, Inc. ("Flair").

The Plan, however, denied Grise benefits based on an exclusion in the policy. Grise then brought this lawsuit against the Plan and Flair under 29 U.S.C. § 1132(a)(1)(A) and (B), better known as § 502(a)(1)(A) and (B) of the Employee Retirement Income Security Act ("ERISA"), alleging that the Plan's denial was arbitrary and capricious.[1]

---

[1] Accordingly, subject matter jurisdiction arises under 28 U.S.C. § 1331. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (*See* Docket # 30.)

Both Grise and Defendants have now moved for summary judgment. (Docket # 27, 34.) The primary issue before the Court is whether the Plan was arbitrary and capricious when it denied Grise benefits because his accident purportedly came under the Plan's "employment-related conditions/workers' compensation" exclusion. In short, the Plan maintains that Grise is not entitled to benefits under the plan because his accident occurred while he was either employed or covered under workers' compensation. For the following reasons, the Court finds that the Plan's determination was arbitrary and capricious; thus, Grise's motion will be GRANTED and Defendants' motion will be DENIED as it pertains to the Plan.[2]

## II. FACTUAL BACKGROUND

Grise operates a little welding business, Alum A Craft, Inc., in part of a building he owns in Elkhart, Indiana.[3] (*See* AR 36, 38.) On July 31, 2012, while cleaning the building's second floor, he either fell through an opening or a false ceiling, breaking his neck and causing paralysis. (AR 8; Compl. ¶¶ 1, 7.) Grise is a beneficiary of a self-insured employee benefit plan for health care sponsored by his wife's employer, Flair. (Compl. ¶ 1.) Flair, as the Plan Administrator, delegated certain ministerial duties, including claim processing, to a third-party administrator, North America Administrators, L.P. ("NAA"). (Defs.' Ex. 1 at 42.)

---

[2] Defendants argue that Flair, as opposed to the Plan, is not a proper defendant in this action and that, as such, summary judgment should be entered in its favor. (Defs.' Mem. in Supp. of Cross Mots. for Summ. J. ("Defs.' Cross Mot. Mem.") 1 n.1 (citing *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996).) Grise concedes this point (Pl.'s Reply in Supp. of Mot. for Summ. J. & Resp. to Defs.' Cross Mot. for Summ. J. ("Pl.'s Reply") 2-3), and, accordingly, the cross-motion for summary judgment is GRANTED as to Flair.

[3] The administrative record will be referred to throughout this Opinion and Order as "AR __." The administrative record is attached as Exhibits 1 through 4 of Grise's memorandum in support of his summary judgment motion. (Docket # 31-1, 31-2, 31-3, 31-4.) The parties stipulated that the support for their summary judgment motions would be limited to the administrative record (Defs.' Cross Mot. Mem. 5), which also includes the plan document (Defs.' Ex. 1), but disagree as to what constitutes the administrative record, an issue resolved at footnote 6.

It was not long afterward that NAA started receiving bills from Grise's health care providers for his rapidly mounting medical expenses. (*See* AR 59-72, 80-87, 92-97, 101-12.) Notably, almost all of these claims reported that Grise's condition was not related to any employment. (AR 59-65, 68-70, 72, 80-84, 86, 92-97, 101-12.) Nonetheless, inexplicably, NAA almost immediately started issuing Explanation of Benefit ("EOB") notices to Grise's wife—first on August 23, again on August 30, and finally on September 13, 2012—cryptically indicating that the charges were ineligible for medical coverage because they were "for workers comp." (AR 91, 100, 117.)

On September 13, 2012, Mrs. Grise wrote a letter to the Plan on behalf of her husband appealing the denial of health insurance coverage, stating that while Alum A Craft, "is still viable on paper," it produces little income and Grise kept it going to offset the cost of the building he occupies.[4] (AR 36.) Describing the building as mostly a warehouse, Mrs. Grise said Grise would go there to feel useful. (AR 36.) Although Grise owned the building—and was there almost every day for that reason—Mrs. Grise said that very little welding was actually performed there and a workers' compensation policy was not in place because, according to Mrs. Grise, the market did not offer an affordable policy for sole proprietors. (AR 36.)

Commenting on the denial of health insurance coverage, Mrs. Grise indicated that "an outside source" told her that a newspaper article in *The Goshen News* on August 12, 2012, "was the factor in changing the course of Chuck's medical claim."[5] (AR 36.) She then expressed that

---

[4] By September 13, 2012, Grise had not received any written explanation for why his medical claims fell under "workers comp," but apparently someone either told Mrs. Grise it was because of his involvement with Alum A Craft or she simply presumed that was the case.

[5] This newspaper article is not in the administrative record.

the article was "for the most part bogus." (AR 36.) Mrs. Grise further asserted that no one

representing the insurance company contacted her or Grise to obtain any information before

denying Grise's claims. (AR 36.)

Mrs. Grise's appeal spawned a request from NAA for more information about Grise's

claims. (*See* AR 8.) In response, Mrs. Grise sent a second letter to NAA on September 20,

2012, in which she reported that, at the time of the accident, Grise was in a commercial building

that he owned with his father and "was doing some maintenance work on the building as an

owner," when he lost his balance and fell through an opening. (AR 8.) She reiterated that,

although there is a space in the building for Grise's small welding business, the accident

happened in a different area; she further reported that Grise was not working on the welding

business at the time of the accident. (AR 8.) Mrs. Grise also observed that since Grise was not

working for the welding business at the time of the accident, workers' compensation coverage

would not apply. (AR 8.)

NAA sent a letter to Mrs. Grise on September 25, 2012, informing her that it had

received her appeal letter and had referred her file to the Plan Administrator for an appeal. (AR

7.) That same day, NAA forwarded a copy of the Grises' appeal to Flair, the Plan Administrator.

(AR 5-6.) The Plan grants the Plan Administrator discretion to, among other things, interpret

and apply all of the Plan's provisions, including eligibility provisions, and make factual

determinations about claim coverage. (Defs.' Ex. 1 at 42.) The letter referring the appeal to

Flair as Plan Administrator—which NAA described as Mrs. Grise "requesting [ ] an

exception"—recited the Plan's exclusion language for "employment-related conditions/workers'

compensation" (AR 5-6), as follows:

16.    **Employment-Related Conditions/Workers' Compensation** - Charges incurred as the result of or in connection with any activity pertaining to any act of employment for profit, gain, or compensation for which you receive a W-2 or 1099 from an Employer, or for which you file a self-employment schedule for federal income taxes; or charges incurred as the result of a disease, illness, or condition for which benefits are payable under any Workers' Compensation Act, any Occupational Diseases Act or any other similar such benefit program.

(Defs.' Ex. 1 at 17.)  The letter to Flair then explained that Grise's claims were denied because they were "considered as in connection with activity pertaining to an act of employment."  (AR 5.)

On October 3, 2012, the Plan Administrator upheld the initial decision denying Grise's claims based on this exclusion.  (AR 3-4.)  NAA notified Mrs. Grise of the Plan's final decision on November 2, 2012, providing the full language of the exclusion and explaining that "[b]ecause the charges were considered as in connection with an activity pertaining to an act of employment, the claims were denied by the Plan and no further benefits are payable."[6]  (AR 2.)

### III. SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only if there are no disputed genuine issues of material fact.  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).  When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or

---

[6] On October 31, 2012, after the appeal was denied, but before NAA notified Grise, his attorney sent a letter to NAA appealing the initial denial along with the Grises' tax returns for 2010 and 2011.  (AR 119-51.)  The parties initially disputed whether the letter and tax returns were part of the administrative record.

Under an arbitrary and capricious standard—which, as explained later, is applicable here—the Court "may consider only evidence that was before the administrator in deciding whether [its] decision passes muster."  *Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614, 619 (7th Cir. 2008) (citation omitted).  Accordingly, the appeal letter and tax returns, submitted on October 31, 2012, were clearly *not* before the Plan Administrator when it made its decision to uphold the denial of Grise's claims on October 3, 2012.  (*See* AR 3-4.)  Moreover, although the Plan initially asserted that the tax returns were submitted earlier, and thus a part of the administrative record, it now concedes that the Court should not consider the returns or any of its arguments relying on them.  (Defs.' Sur-Reply in Supp. of Cross Mots. for Summ. J. ¶ 2.)  As such, the Court cannot consider either the October 31st letter or the Grise's 2010 and 2011 tax returns in evaluating the Plan's decision under the arbitrary and capricious standard.

decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 507 (7th Cir. 2010) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

"When cross-motions for summary judgment are filed, 'courts look to the burden of proof that each party would bear on an issue of trial; [courts] then require that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact.'" *M.O. v. Ind. Dep't of Educ.*, 635 F. Supp. 2d 847, 850 (N.D. Ind. 2009) (alteration in original) (quoting *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)). For claims seeking benefits under an ERISA plan, the plaintiff bears the burden of proving the claimant's entitlement to the benefits of insurance coverage, while the defendant insurer bears the burden of establishing the claimant's lack of entitlement. *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir. 2007).

"The contention of one party that there are no issues of material fact sufficient to prevent the entry of judgment in its favor does not bar that party from asserting that there are issues of

material fact sufficient to prevent the entry of judgment as a matter of law against it." *M.O.*, 635 F. Supp. 2d at 850 (citation omitted); *see Zook v. Brown*, 748 F.2d 1161, 1166 (7th Cir. 1984). "[C]ross-motions for summary judgment do . . . not alter the respective burdens on cross-motions for summary judgment—more particularly here, the responsive burden of a plaintiff who moves for summary judgment and is confronted with a cross-motion for summary judgment. The motions are treated separately." *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 504 (7th Cir. 2008) (citations omitted); *M.O.*, 635 F. Supp. 2d at 850.

## IV. DISCUSSION

### A. The Plan's Decision Cannot Be Overturned Unless It Was Arbitrary and Capricious

Grise's claim arises under ERISA § 502(a)(1)(B), which enables a beneficiary in an employee benefit plan "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[7] 29 U.S.C. § 1132(a)(1)(B). "Judicial review of a plan administrator's benefits determination is de novo unless the plan grants the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 766 (7th Cir. 2010) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). When the administrator has such discretion, "the court applies a more deferential standard, seeking to determine only whether the administrator's decision was

---

[7] Grise also brings his claims under § 502(a)(1)(A) (Compl. § 1), which allows a participant to obtain civil penalties against plan administrators for failing to provide beneficiaries information when requested. 29 U.S.C. §§ 1132(a)(1)(A), 1132(c); *see Gassner v. Int'l Bus. Machs. Corp.*, No. 02 C 5982, 2004 WL 2066887, at *10 (N.D. Ill. Sept. 9, 2004). Although Grise reiterates in his summary judgment motion that he is suing to redress violations under both ERISA § 502(a)(1)(A) and (B) (Pl.'s Mem. in Supp of Mot. for Summ. J. ("Pl.'s Mem. in Supp.") 1), he focuses solely on recovering benefits under § 502(a)(1)(B) and does not argue that civil penalties should be imposed against the Plan under § 502(a)(1)(A). Such underdeveloped arguments are deemed waived, *see Trentadue v. Redmon*, 619 F.3d 648, 654 (7th Cir. 2010); thus, the Court addresses only Grise's claim under § 502(a)(1)(B).

'arbitrary and capricious.'" *Id.* (citations omitted). The same standard of review applies to both the plan administrator's factual determinations and its interpretation of the plan's provisions. *See Ramsey v. Hercules Inc.*, 77 F.3d 199, 204 (7th Cir. 1996).

Here, the Plan plainly grants the Plan Administrator discretion to determine eligibility for benefits and to construe its terms. (*See* Defs.' Ex. 1 at 42 (granting the Plan Administrator the discretion to, among other things, interpret and apply all the Plan's provisions and make factual determinations with respect to whether the Plan covers a claim).) Indeed, Grise does not dispute the point and, thus, the arbitrary-and-capricious standard applies to this Court's review of the Plan's determinations and its interpretation of the plan language. *See Ramsey*, 77 F.3d at 204.

Although review under this standard is deferential, it is not a mere rubber stamp. *Holmstrom*, 615 F.3d at 766. The Seventh Circuit Court of Appeals has explained that "arbitrary-and-capricious review turns on whether the plan administrator communicated 'specific reasons' for its determination to the claimant, whether the plan administrator afforded the claimant 'an opportunity for full and fair review,' and 'whether there is an absence of reasoning to support the plan administrator's decision.'" *Majeski v. Metro. Life Ins. Co.*, 590 F.3d 478, 484 (7th Cir. 2009) (quoting *Leger v. Tribune Co. Long Term Disability Benefit Plan*, 557 F.3d 823, 831 (7th Cir. 2009)). Questions of judgment must be left to the plan administrator, and it is not this Court's function to decide whether it would reach the same conclusion as the administrator. *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 576 (7th Cir. 2006) (citations omitted).

### B. The Plan's Decision Was Arbitrary and Capricious

Grise first contends that the Plan's denial of benefits was arbitrary and capricious because the administrative record contains an absence of reasoning to support it. (*See* Pl.'s

Mem. in Supp. 9-12.)  The Plan responds that its decision was reasonable based upon the plan language and the administrative record.   (*See* Defs.' Cross Mot. Mem. 8-11.)

Under the arbitrary-and-capricious standard, the Court will uphold the Plan's decision if:

(1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem.

*Becker v. Chrysler LLC Health Care Benefits Plan*, 691 F.3d 879, 885 (7th Cir. 2012).  Put another way, the Court looks only to ensure that the Plan's decision has rational support in the record.  *Id.*  Moreover, the Plan must articulate an explanation that makes a "rational connection" between the issue, the evidence, the text, and the decision made.  *Schaub v. Consol. Freightways, Inc. Extended Sick Pay Plan*, 895 F. Supp. 1136, 1140 (S.D. Ind. 1995).

In the instant case, the Plan denied Grise's benefits under its "employment-related conditions/workers' compensation" exclusion.  (AR 2, 3.)  That exclusion provides that benefits are not payable if charges were incurred: (1) as the result of or in connection with any activity pertaining to any act of employment for profit, gain, or compensation for which the claimant either receives a W-2 or 1099 from an employer or files a self-employment schedule for federal income taxes; or (2) as the result of a disease, illness, or condition for which benefits are payable under any Workers' Compensation Act, Occupational Diseases Act, or other similar benefit program.  (Defs.' Ex. 1 at 17.)  By using "or," "[t]his exclusion is written in the disjunctive; one exclusion does not depend on the other, nor does one determine the other."  *Marquette Gen. Hosp. v. Goodman Forest Indus.*, 315 F.3d 629, 633 (6th Cir. 2003). But a review of the administrative record reveals that it does not provide rational support for the Plan's denial of

coverage under either part of the exclusion.[8]

### 1. The Plan's Initial Denial of Benefits

First, NAA, the third-party administrator charged with processing claims, initially determined that the medical bills arising from Grise's accident were ineligible for coverage because they were for workers' compensation. (AR 91, 100, 117.) Nothing in the administrative record, however, indicates *why* NAA determined, as an initial matter, that Grise's claims were for workers' compensation. In fact, most of the health insurance claim forms submitted by Grise's medical providers reported that his condition was *not* employment related. (AR 59-65, 68-70, 72, 80-84, 86, 92-97, 101-12.)

In her September 13, 2012, letter appealing the denial of health coverage, Mrs. Grise states, "Through an outside source, I have been told that the article in The Goshen News [sic] on

---

[8] Although the parties do not raise the issue, the Plan's failure to follow ERISA's procedural requirements significantly hampered Grise's ability to obtain meaningful and "full and fair" review of the Plan's benefits denial at both the administrative appeal and judicial review stages. *See Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 688-89 (7th Cir. 1992). First, the EOB notices issued to the Grises (AR 91, 100, 117) do not comply with the requirements set forth in 29 C.F.R. § 2560.503-1(g)(1)(i)-(iv). The EOBs offer only a bare conclusion that the charges were "for workers' comp," which fails to communicate the "specific reasons" for the denial, *see Love v. Nat'l City Corp. Welfare Benefits Plan*, 574 F.3d 392, 397 (7th Cir. 2009); do not identify the specific provision under which the charges were excluded, *see Tormey v. Gen. Am. Life Ins. Co.*, 973 F. Supp. 805, 813-14 (N.D. Ill. 1997); and do not describe the additional material or information necessary for Grise to perfect his claim or the Plan's review procedures and their time limits. *See* 29 C.F.R. 2560.503-1(g)(1)(i)-(iv).

Additionally, between the initial denial of benefits and the final denial, the Plan appears to have switched its basis for the denial from the workers' compensation exclusion to one based on employment-related conditions. (*Compare* AR 91, 100, 117 (stating that Grise's charges were "for workers' comp" and thus ineligible), *with* AR 2-3 (denying Grise's charges as "in connection with an activity pertaining to an act of employment").) But "[d]enying a claim at the administrative appeal stage based on grounds not asserted in the initial claim denial is [ ] a violation of ERISA's procedural requirements." *Brimer v. Life. Ins. Co. of N. Am.*, 462 F. App'x 804, 809 (10th Cir. 2012) (unpublished); *see also Halpin*, 962 F.2d at 696 (noting that a *post hoc* attempt to furnish a rationale for a denial of benefits to avoid reversal on appeal is unacceptable).

Finally, it is somewhat suspect that NAA, in its letter referring Grise's appeal to the Plan Administrator, states, "Mrs. Grise is requesting that an exception be made in this instance and that the claims be processed by the Plan" (AR 6), a statement that is then repeated in the Plan Administrator's final denial letter (AR 4). Yet the regulations require that a plan provide for a review on appeal that "does not afford deference to the initial adverse benefit determination." 29 C.F.R. § 2560.503-1(h)(3)(ii). NAA's statement that, on appeal, Mrs. Grise was "requesting that an exception be made," and the Plan Administrator's adoption of it, suggest that the Plan's initial determination may have been afforded impermissible deference. In her appeal, Mrs. Grise was not seeking an "exception" from the exclusion, but rather an independent review of the Third-Party Administrator's reliance upon it.

August 12, 2012, was the factor in changing the course of Chuck's medical claim." (AR 36.)
This assertion is somewhat borne out by the fact that NAA issued its three EOBs denying Grise
coverage on August 23, August 30, and September 13, 2012 (AR 91, 100, 117), after the article
was purportedly published, and also by NAA's September 25th letter, which is duplicated and
signed as the Plan Administrator's October 3rd denial on appeal, which states that "Mrs. Grise
mentions *the* article in The Goshen News [sic] on August 12, 2012." (AR 4, 6 (emphasis
added).) Referring to "*the* article" in this manner suggests that both NAA and Flair knew about
the article as well. More importantly, the Plan's counsel admitted at the Rule 16 preliminary
pretrial conference on January 31, 2013, that the Plan considered this newspaper article in
determining that Grise suffered an occupational injury. (*See* Docket # 21.) And he did so
twice—first as his own affirmative statement that Mrs. Grise, in her appeal letter, "challenges the
news article that the company considered," and then when confirming the Court's recounting of
his representations.

Such a deliberate, clear, and unequivocal oral statement, made in the course of judicial
proceedings, qualifies as a judicial admission. *In re Lefkas Gen. Partners*, 153 B.R. 804, 807
(N.D. Ill. 1993) (citations omitted); *see McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 680 (7th
Cir. 2002) (holding that a verbal admission by defense counsel at oral argument was a binding
judicial admission, "the same as any other formal concession made during the course of
proceedings"). A judicial admission is binding upon the party making it, cannot be controverted
at trial or on appeal, and has the effect of withdrawing a fact from contention. *Keller v. United
States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995). As such, the Plan is bound by its counsel's
statement at the scheduling conference—that the Plan considered the newspaper article when

deciding to deny Grise benefits.

Yet, despite the fact that the Plan admittedly *considered* this newspaper article, it is not in the administrative record, meaning that the Court cannot evaluate or determine if the article provides rational support for the Plan's initial determination. *See Becker*, 691 F.3d at 885 (instructing the Court to look to ensure that the Plan's decision has rational support *in the record*). Moreover, the "persistent core requirements" of full and fair review "include knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision." *Militello v. Cent. States, Se. & Sw. Areas Pension Fund*, 360 F.3d 681, 690 (7th Cir. 2004). But, in spite of Mrs. Grise's contention that this news article was mostly "bogus," it appears that the Plan never did anything to verify the information reported there by, for instance, interviewing the Grises.

The flaws in the Plan's initial determination do not end there. When initially denying Grise benefits—ostensibly because his medical bills fell under "workers comp"—it gave no explanation of how it came to this conclusion or what evidence it relied on, thereby failing to make a "rational connection" between the issue, the evidence, the text, and its decision. *See Schaub*, 895 F. Supp. at 1140. Because there is no evidence in the record to support the Plan's initial determination, it is not possible to offer a reasonable explanation for the Plan's initial denial of benefits. And, as the Court will take up next, the statements in Mrs. Grise's two appeal letters do not cure this initial deficiency or provide rational support for the application of either part of the "employment-related conditions/workers' compensation" exclusion.

*2. The "Employment-Related Conditions" Exclusion*

The first part of the exclusion—excluding charges arising from employment-related conditions—is easily disposed of. That part of the exclusion requires that the charges be incurred as the result of or in connection with any activity pertaining to any act of employment for profit, gain, or compensation for which the claimant either receives a W-2 or 1099 from an employer or files a self-employment schedule for federal income taxes. (Defs.' Ex. 1 at 17.) The administrative record, however, does not contain a W-2, 1099, or a self-employment schedule for Grise and Mrs. Grise's letters do nothing to plug the gap. As such, it was not rational for the Plan to determine that this part of the exclusion applied when the record was devoid of anything that met its requirements. *See Wheeler v. Aetna Life Ins. Co.*, No. 01 C 6064, 2003 WL 21789029, at *11 (N.D. Ill. July 23, 2003) (concluding that a plan's termination of benefits was arbitrary and capricious when it failed to either acknowledge the actual language of the plan provisions under which the benefits were terminated or analyze the claimant's condition in accordance with those provisions).

Nor does the record allow the Plan to offer a reasoned explanation for applying the exclusion; indeed, if anything, the record seemingly supports the conclusion that the employment-related conditions exclusion does *not* apply to Grise's claims because there is no evidence that he received a W-2, a 1099, or filed any sort of self-employment schedule, or, even (as the Plan's exclusionary language puts it) that he was engaged in "any act of employment . . . [.]" Consequently, this part of the exclusion could not apply to Grise on this record.

*3. The "Workers' Compensation" Exclusion*

Undeterred, the Plan retreats to its original basis for denial—that Grise's claims are

excluded because they were "incurred as the result of a disease, illness, or condition for which benefits are payable under any Workers' Compensation Act, any Occupational Diseases Act or any other similar such benefit program." (Defs.' Ex. 1 at 17.) Although there is no evidence in the administrative record supporting the Plan's initial determination that Grise's claims were "for workers comp"—again, lending some credence to the assertion that the mostly "bogus" newspaper article was considered—the Plan argues that Mrs. Grise's two appeal letters form the basis for applying this part of the exclusion.

In those letters, Mrs. Grise stated that her husband was a co-owner of the warehouse-type building in which the accident occurred—and was there almost every day for that reason—and while she described the structure as a "commercial property," she noted that only a small part of it was for Alum A Craft, a business that produced very little income, but which remained "viable on paper." (AR 8, 36.) She further explained that Grise kept Alum A Craft going to offset the cost of the building, which she described as more of a place for Grise to do personal projects, with welding only taking less than ten percent of his time. (AR 36.) And a workers' compensation policy was not in place because the market did not offer an affordable policy for sole proprietors. (AR 36.) At the same time, Mrs. Grise maintained that the accident did *not* happen in the part of the building that housed Alum A Craft or while Grise was working for that business; rather, she articulated that the accident occurred in a different part of the building while Grise was doing maintenance work as the owner. (AR 8.)

Grise argues that the Plan simply ignored these assertions (*see* Pl.'s Mem. in Supp. 12-13), while the Plan argues that "each time Mrs. Grise made those assertions, she further described that Plaintiff was working in the commercial property that he owned and maintained

for business purposes and used to generate income" (Defs.' Cross Mot. Mem. 9). In order to adequately address these arguments, state laws governing workers' compensation must be considered. Since both sides rely on the Indiana Workers' Compensation Act ("WCA") (Defs.' Cross-Mot. Mem. 10-11; Pl.'s Reply 14-17), the Court confines its analysis to that statute and the related case law.

To recover under the WCA, "a claimant must establish that an injury or death occurred 'by accident arising out of and in the course of employment.'" *Outlaw v. Erbich Prods. Co.*, 742 N.E.2d 526, 529 (Ind. Ct. App. 2001) (citing IND. CODE § 22-3-2-2). "An injury 'arises out of' employment when a casual nexus exists between the injury sustained and the duties or services performed by the injured employee." *Id.* (citation omitted). And "[a]n accident occurs 'in the course of employment' when it takes place within the period of employment, at a place where the employee may reasonably be, and while the employee is fulfilling the duties of employment or while engaged in doing something incidental thereto." *Id.* (citation omitted). Although both of these requirements must be met before, as the Plan puts it, "benefits are payable" under the WCA, *Milledge v. Oaks*, 784 N.E.2d 926, 929 (Ind. 2003), the Plan addresses only the first one, arguing that Grise's injury arose out of his employment. (Defs.' Cross. Mot. 10-11.)

> *a. "Arising Out" of Employment*

The causal connection necessary to show that an accidental injury arises out of employment "is established when a reasonably prudent person considers the injury to be born out of a risk incidental to the employment, or when the facts indicate a connection between the injury and the circumstances under which the employment occurs." *Milledge*, 784 N.E.2d at 929 (quoting *Wine-Settergren v. Lamey*, 716 N.E.2d 381, 389 (Ind. 1999)). The risks "incidental to

employment" fall into the following three categories: (1) risks distinctly associated with employment, (2) risks personal to the claimant, and (3) risks that are neither distinctly employment nor distinctly personal in character. *Id.* at 930 (citations omitted). Risks that fall into either the first or third category are generally covered under the WCA, while risks personal to the claimant—those that are either caused by a pre-existing illness or condition unrelated to employment—are not compensable. *Id.* (citation omitted).

The Plan relies on *Milledge* for the proposition that "[i]n cases where the cause of an injury cannot be determined with certainty to arise out of employment, the Indiana Supreme Court has held that an individual's injury is presumed to arise out of activities incidental to employment and, therefore, be compensable under the WCA." (Defs.' Cross Mot. Mem. 10.) That, however, is not the holding of *Milledge*. On the contrary, *Milledge* holds that when resolving questions concerning injuries that result from "neutral risks"—meaning that they are neither personal to the claimant nor distinctly associated with the employment—courts should apply the "positional risk doctrine." 784 N.E.2d at 931-32. Under this doctrine, "[a]n injury arises out of the employment if it would not have occurred *but for* the fact that the conditions and obligations of the employment placed the claimant in the position where he was injured." *Id.* at 931 (emphasis in original) (citation omitted). If the "in the course of employment" element is then met, it creates a rebuttable presumption that the injury "arises out" of employment. *Id.*

According to the administrative record, however, the only possible employer here is Alum A Craft as there is no evidence that Grise was employed by any other business.[9] But, as

---

[9] To the extent that the Plan is arguing that at the time of his accident Grise was working for some unidentified entity when cleaning the jointly owned building, there is no evidence in the record to support this claim. Moreover, even if an entity existed, the record contains no evidence establishing whether this entity employed five or more persons such that the WCA would apply, *see* IND. CODE § 22-3-9-1, or that Grise was serving that entity

16

discussed later, the record contains no evidence that Grise's accident occurred in the course of his employment with Alum A Craft, and, as such, no rebuttable presumption is created. More to the point, there is nothing in the record showing that the conditions and obligations of Grise's alleged employment at Alum A Craft put him on the second floor of the building as opposed to his capacity as its owner.

Besides *Milledge*, the other case that Plan relies on, *Manous, LLC v. Manousogianakis*, 824 N.E.2d 756, 766-67 (Ind. Ct. App. 2005), in which the Indiana Court of Appeals held that a business owner's murder in his café after business hours was compensable under the WCA, is also distinguishable from Grise's case. In that case, the Court of Appeals explicitly noted that there was no evidence that any other activities, besides business-related activities, were conducted on the premises. *Id.* at 766. Here, however, there is ample evidence that Grise performed other activities unrelated to business in the building; in fact, according to Mrs. Grise's statements, only ten percent of Grise's time in the building was even spent on his welding business, with the vast majority devoted to personal projects or tasks unrelated to Alum A Craft (AR 36). Thus, the record offers no rational support for the conclusion that Grise's injuries "arose out" of his employment with Alum A Craft.

  *b. "In the Course of Employment"*

As to the second requirement, the Plan points to no evidence in the record, and this Court cannot find any, that Grise's injuries occurred "in the course of" his employment with Alum A Craft. Arguably, the accident occurred at a place where Grise, as an Alum A Craft employee,

---

"under any contract of hire or apprenticeship, written or implied" as is required to make him an employee under the WCA, *see* IND. CODE § 22-3-6-1(b). Even more damaging to the Plan's argument is the fact that the record is completely devoid of any evidence that Alum A Craft employed the five persons necessary for it to incur obligations under the WCA. *See* IND. CODE § 22-3-9-1.

would reasonably be, but there is no evidence that the accident occurred "within the period of employment" or while Grise "was fulfilling the duties of employment or [ ] engaged in doing something incidental thereto." *Outlaw*, 742 N.E.2d at 529.

First, "the period of employment encompasses a reasonable time before and after the employer engages in work." *Constr. Mgmt. & Design, Inc. v. Vanderweele*, 660 N.E.2d 1046, 1049 (Ind. Ct. App. 1996) (citation omitted). But the only evidence in the record is from Mrs. Grise's letters, in which she explicitly contends he was *not* working for the welding business at the time of his accident, but rather was cleaning another part of the building. More importantly, as illustrated by Mrs. Grise's letters, Grise was neither fulfilling employment duties for Alum A Craft, nor engaged in doing something incidental to, or in furtherance of, that employment when his accident occurred. On this record, it appears that other than the fact that the accident occurred in a different part of the same building that housed Alum A Craft, there was no connection between the two. *See id.* at 1050-51 (concluding that an accident did not occur in the course of the claimant's employment when he was engaged in an endeavor which could only be described as personal and not in furtherance of company business). As such, the record lacks any evidence that Grise's accident either occurred in the course his employment with Alum A Craft or arose out of that employment, both of which are required for the WCA to apply.

In the end, the Plan bears the burden of establishing Grise's lack of entitlement to medical coverage. *Diaz*, 499 F.3d at 643. But there is no evidence in the record, as it stands today, from which the Plan could reasonably determine that either part of the "employment-related conditions/workers' compensation" exclusion applied to Grise's injuries, making the Plan's denial of benefits based on this exclusion arbitrary and capricious. Therefore, Grise's

motion for summary judgment will be GRANTED, while Defendants' Cross-Motion for Summary Judgment will be DENIED as to the Plan.

## *C. Remedy*

Turning to the appropriate remedy, Grise asks for legal fees pursuant to ERISA and "all other relief appropriate in the premises" in his motion (Pl.'s Mem. in Supp. 16) and, in his Complaint, also requests a judgment in his favor, an award of damages sufficient to compensate him for his losses, and prejudgment interest, if appropriate (Compl. 10). But a plan participant does not have a right to sue a plan fiduciary for damages. *See Harzewski v. Guidant Corp.*, 489 F.3d 799, 804 (7th Cir. 2007). Furthermore, although the Court has discretion to award reasonable attorneys' fees and costs as well as prejudgment interest, *see Holmstrom*, 615 F.3d at 779, the parties have not briefed either of these issues, and, thus, the Court will reserve judgment on these issues until they have done so.

Nevertheless, having found that the Plan acted arbitrarily and capriciously in denying Grise benefits, the question is whether the case should be remanded for further findings and explanations or whether benefits should be directly awarded. *Powers v. Nat'l Rural Letters Carriers' Ass'n Long-Term Disability Income Plan*, No. 4:07-cv-0062-DFH-WGH, 2009 WL 1259378, at *9 (S.D. Ind. May 5, 2009). According to the Seventh Circuit, when a plan administrator fails to provide adequate reasoning for its determination or to afford the claimant adequate procedures in its initial denial of benefits, both of which are the case here, the appropriate remedy is to remand to the plan administrator for further findings or explanations and to provide the claimant with the procedures he sought in the first place. *Majeski*, 590 F.3d at 484 (citations omitted); *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d

771, 775-76 (7th Cir. 2003). Moreover, "[w]hen additional evidence on the merits of the claims for benefits is presented for the first time to the district court, the court should remand to the fiduciary to make the initial assessment of whether such facts establish an applicant's eligibility." *Wolfe v. J.C. Penney Co.*, 710 F.2d 388, 394 (7th Cir. 1983), *abrogated on other grounds by Firestone Tire*, 489 U.S. at 115. On the other hand, a direct award of benefits is reserved for "the rare case where the record . . . contains such powerfully persuasive evidence that the only determination the plan administrator could reasonably make is that the claimant is [covered under the plan]." *Kirkpatrick v. Liberty Mut. Grp., Inc.*, 856 F. Supp. 2d 977, 999 (S.D. Ind. 2012) (quoting *Majeski*, 590 F.3d at 484).

In the instant case, the parties have submitted additional evidence to this Court—namely tax returns that were not a part of the administrative record—suggesting that a remand is appropriate. *See Wolfe*, 710 F.2d at 394. Furthermore, although Grise has shown that the Plan acted arbitrarily and capriciously, the evidence is not so powerfully persuasive that the only determination the Plan could reasonably make is that Grise's claims were covered under the plan. That determination is to be made on remand, after the Plan has considered all the evidence, adequately investigated the circumstances surrounding Grise's accident, clearly and fully articulated the basis for its decision and the reasons supporting it, and sufficiently complied with ERISA's notification procedures.

## V. CONCLUSION

For the foregoing reasons, Plaintiff Charles Grise's Motion for Summary Judgment (Docket # 27) is GRANTED and Defendants' Cross Motion for Summary Judgment (Docket # 34) is GRANTED as to Flair Interiors, Inc., but DENIED as to Flair Interiors, Inc. Employee

Benefit Plan.

Grise's claims are therefore REMANDED to the Plan for administrative proceedings, with instructions to complete a benefits eligibility determination no later than April 26, 2013. Counsel are to inform the Court of the Plan's decision promptly thereafter. The Court retains jurisdiction over this action, which will remain open during the remand. *See Lockhart v. Jefferson Pilot Fin. Ins. Co.*, No. 03 C 1745, 2005 WL 914446, at *15 (N.D. Ill. Mar. 29, 2005); *Robyns v. Reliance Standard Life Ins.*, No. IP98-1241-C-H/G, 2001 WL 699886, at *3 (S.D. Ind. May 17, 2001).

SO ORDERED.

Enter for this 27th day of March, 2013.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge